NO. 07-06-0010-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



MAY 25, 2007



______________________________




LARRY BRENT KITCHENS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_________________________________



FROM THE 287TH DISTRICT COURT OF BAILEY COUNTY;



NO. 2305; HONORABLE GORDON H. GREEN, JUDGE



_______________________________






Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.



OPINION




 Appellant, Larry Brent Kitchens, was convicted of the offense of capital murder and
sentenced to life. By his first two issues, Appellant alleges the trial court committed
reversible error by denying his motion to quash the indictment and by overruling his
objection to the court's charge. By a third and final issue, he alleges that the evidence is
legally insufficient to support the conviction for capital murder. Finding no error, we affirm.

Background Facts


 On October 10, 2003, Vince Simnacher, Appellant's ex-wife, Rhonda Kitchens, and 
other friends gathered at Simnacher's house for a party to celebrate the anniversary of the
divorce between Appellant and Rhonda. During the party, Appellant entered the residence
with a loaded SKS semi-automatic assault rifle and began shooting. When the shooting
was over, Vince Simnacher, Rhonda Kitchens, and Derwin Beauchamp were dead. 
Appellant left the Simnacher residence, returned to his own residence, and awaited the
police. Shortly thereafter, he surrendered himself to a Department of Public Safety trooper
and he was transported to the Bailey County Jail. Appellant was charged with capital
murder.

 The State's theory of the case was that Appellant was upset about the situation
surrounding his ex-wife, that he entered the Simnacher residence, without the consent of
the owner and with the intent to commit an assault, and that while in the course of
committing that burglary, he did intentionally shoot and kill Vince Simnacher. 

 Analysis


 By his first issue, Appellant contends the trial court erred when it overruled his 
motion to quash the indictment for failure to allege the constituent elements of the
underlying offense of burglary. Specifically, he complains that the indictment did not allege
which theory of burglary the State intended to prove. That motion was overruled.

 A person commits the offense of capital murder if the person intentionally causes
the death of an individual in the course of committing or attempting to commit a burglary. 
Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2006). Under the provisions of §
30.02(a) of the Texas Penal Code, a person commits the offense of burglary if that person
enters a habitation, without the effective consent of the owner (1) with intent to commit a
felony, theft, or an assault; or (2) commits or attempts to commit a felony, theft, or an
assault. A person commits the offense of assault if the person intentionally, knowingly, or
recklessly causes bodily injury to another; intentionally or knowingly threatens another with
imminent bodily injury; or intentionally or knowingly causes physical contact with another
when the person knows or should reasonably believe that the other person will regard the
contact as offensive or provocative. Id. at § 22.01(a).

 The indictment in this case alleges that Appellant "on or about the 10th day of
October, 2003, . . . did then and there intentionally cause the death of an individual,
namely, Vince Simnacher, by shooting him with a rifle, and [Appellant] was then and there
in the course of committing or attempting to commit the offense of burglary of the residence
of Vince Simnacher, who was the owner of the residence." 

 The Court of Criminal Appeals has repeatedly held that an indictment need not
allege the constituent elements of the aggravating feature which elevates a murder to
capital murder. E.g., Alba v. State, 905 S.W.2d 581, 585 (Tex.Crim.App. 1995) (murder
in the course of committing burglary); Barnes v. State, 876 S.W.2d 316, 322
(Tex.Crim.App. 1994) (murder in the course of committing burglary); Beathard v. State, 767
S.W.2d 423, 431 (Tex.Crim.App. 1989) (murder in the course of committing burglary);
Marquez v. State, 725 S.W.2d 217, 236 (Tex.Crim.App. 1987), abrogated on other grounds
by Moody v. State, 827 S.W.2d 875 (Tex.Crim.App. 1992) (murder in the course of
committing aggravated sexual assault); Hogue v. State, 711 S.W.2d 9, 14 (Tex.Crim.App.
1986) (murder in the course of committing arson); Hammett v. State, 578 S.W.2d 699, 708
(Tex.Crim.App. 1979) (murder in the course of committing robbery). 

 Appellant does not provide any authority which excepts the facts and circumstances
of this case from this general rule. Instead, he argues that it was error to fail to require the
State to allege those elements because his ability to prepare his defense was "substantially
impacted" by the lack of specific notice as to which theory of burglary the State intended
to prove. He argues that his counsel was forced to attempt to discredit all testimony that
could possibly establish any of the theories of burglary that might be argued from the facts
of the case. Under the facts of this case, burglary might be established by showing that
Appellant entered the Simnacher residence with the intent to commit a felony, theft, or
assault. Similarly, an assault might be established by showing that Appellant had the intent
to cause bodily injury, threaten imminent bodily injury, or make offensive physical contact
with Vince Simnacher, Rhonda Kitchens, or any other party guest. 


 While the task presented to Appellant's counsel may have been formidable, the
dilemma he faced was no different than that faced by counsel in Alba, Barnes, or
Beathard. We see no compelling reason to distinguish this case from the line of cases
which have held that the specific theory of burglary need not be alleged in a capital murder
indictment based upon the aggravating offense of burglary. Appellant's first issue is
overruled.

 By his second issue, Appellant contends the trial court erred by submitting the
definition of burglary with intent to commit assault in the charge. He further contends that
the submission was error because it authorized the jury to convict him on a theory not
alleged in the indictment.

 Appellant complains about that portion of the charge that reads as follows:

 A person commits burglary, if, without the effective consent of the owner, the
person intentionally or knowingly enters a building and commits or attempts
to commit an assault. Assault is committed if the person: (1) intentionally,
knowingly, or recklessly causes bodily injury to another, . . . (2) intentionally
or knowingly threatens another with imminent bodily injury, . . . or (3)
intentionally or knowingly causes [offensive physical contact].


 Appellant argues that the addition of the elements of burglary, to-wit: entry into a
building and the commission or attempted commission of an assault and the addition of
the definition of assault constitutes fundamental error because they enlarge the indictment
by authorizing a conviction on one or more theories not alleged in the indictment. We
disagree.

 The indictment requires proof of murder intentionally committed "in the course of
committing or attempting to commit the offense of burglary. . . ." In order to understand the
concept of burglary, the jury was entitled to a statutorily correct definition of burglary. 
Because the indictment need not allege the specific theory of burglary relied upon by the
prosecution, the trial court was limited, not by any specific allegation, but by the evidence. 
The evidence introduced in this cause supported the State's theory that Appellant entered
the Simnacher residence without consent and committed or attempted to commit the
offense of assault. As such, the jury was required to understand the proper legal definition
of both burglary and assault. 

 The charge at issue does not permit nor require proof different than that required 
by the indictment. In order to have a clear understanding of its duty and purpose, the
charge of the court should contain a statutorily correct definition of any legal term or phrase
that the jury must necessarily use in order to properly resolve an issue. Watson v. State,
548 S.W.2d 676, 679 (Tex.Crim.App. 1977); Thomas v. State, 474 S.W.2d 692, 695
(Tex.Crim.App. 1972); Parsons v. State, 191 S.W.3d 862, 864 (Tex.App.-Waco 2006, pet.
ref'd); Nguyen v. State, 811 S.W.2d 165, 167 (Tex.App.-Houston [1st Dist.] 1991, pet.
ref'd). Because the jury was called upon to understand the concepts of both burglary and
assault, the trial court did not err by including these definitions. Appellant's second issue
is overruled.


 By his final issue, relying on Garrett v. State, 573 S.W.2d 543 (Tex.Crim.App.
1978), Appellant asserts that the evidence was legally insufficient to support his conviction
for capital murder because burglary with intent to commit assault against a specific victim
cannot be used to enhance the murder of that victim to capital murder. In other words,
Appellant contends that the indictment in this case required the State to prove that the
intended victim of the assault was someone other than the victim of the murder and that
the evidence was, therefore, legally insufficient to support the jury's verdict. 

 At the outset, it should be observed that although Appellant complains about the
legal sufficiency of the evidence, his ground is in reality a challenge to the State's theory
of prosecution embodied in the indictment. In Garrett, the Court of Criminal Appeals held
that a defendant could not be prosecuted for felony murder where the assaultive act
resulting in the homicide is relied upon as the felony which boosts the homicide into the
murder category. See id. at 545-46. Because the felony murder rule allows the underlying
felony offense to supply the necessary culpable mental state, the court reasoned that the
statutory restriction which prohibits manslaughter from being the underlying felony would
be circumvented if a felony murder could be predicated on the underlying aggravated
assault. See id. In effect, the Court held that to allow an assault to be used as the felony
that makes an offense a felony murder, is to create an offense not authorized by the
Legislature because the Legislature had specifically provided that recklessly causing the
death of an individual (manslaughter) could not be used as a basis for making a homicide
a murder pursuant to § 19.02(b)(3) of the Texas Penal Code. See id. Because the
underlying felony assault supplies the necessary culpable mental state for the act of
murder, the Court of Criminal Appeals believed that the application of the felony murder
rule to those facts was an "attempt to split into unrelated parts an indivisible transaction." 
Id. at 546. This reasoning, however, does not apply in the context of a capital murder
predicated upon the commission of a burglary because the State is not creating an offense
not authorized or contemplated by the Legislature. Furthermore, unlike Garrett, in the
capital murder scheme, the intent to cause the death of the individual is wholly
independent of the intent to commit the aggravating offense. The murder and burglary are
clearly divisible transactions, each with its own requisite mens rea. While the mens rea of
the two offenses may overlap, this capital murder scheme does not require a transference
of intent from the burglary offense to the murder. Therefore, we find the merger of intent
doctrine of Garrett to be inapplicable to the prosecution of capital murder under §
19.03(a)(2).

 Assuming that the legal sufficiency of the evidence was at issue, for purposes of
appellate review, this Court must give deference to "the responsibility of the fact finder to
fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts." Jackson v. Virginia, 443 U. S. 307, 318-19
(1979). See also Hooper v. State, 214 S.W.3d 9 (Tex.Crim.App. 2007). When assessing
the legal sufficiency of the evidence to support a criminal conviction, the appellate court
must consider all the evidence in the light most favorable to the verdict and determine
whether, based on that evidence and reasonable inferences to be drawn therefrom, a
rational juror could have found the essential elements of the crime beyond a reasonable
doubt. Jackson, 443 U.S. at 318-19; Hooper, 214 S.W.3d at 13. Each fact need not point
directly and independently to the guilt of the accused, so long as the cumulative force of
all the evidence is sufficient to support the conviction. Circumstantial evidence alone is
sufficient to establish the guilt of the accused, and the standard of review as to the
sufficiency of the evidence is the same for both direct and circumstantial evidence cases. 
 Hooper, 214 S.W.3d at 13. 

 In a legal sufficiency of the evidence review, the essential elements of the offense
are those of a hypothetically correct jury charge for the offense in question (i.e., one that
accurately sets out the law and adequately describes the offense for which the appellant
was tried without increasing the state's burden of proof or restricting the state's theory of
criminal responsibility). Id. at 14. Therefore, it is important to note that where the
indictment and the trial court's charge authorize the jury to convict on more than one legal
theory, as they did in this case, the verdict of guilt will be upheld if the evidence is sufficient
on any of the theories possible. Id. 

 Applying this analysis to the facts of this case, we must determine whether a rational
juror could have found that Appellant intentionally caused the death of Vince Simnacher
while in the course of committing a burglary of the Simnacher residence. Here, the State's
theory of prosecution would have allowed for a conviction if the jury had found that
Appellant entered the Simnacher residence with the intent to (1) cause bodily injury, (2)
threaten to cause imminent bodily injury, or (3) make offensive physical contact with Vince
Simnacher, Rhonda Kitchens, or any other party guest in attendance. Therefore, in
reviewing the sufficiency of the evidence we must consider each possibility.

 It is undisputed that Appellant entered the Simnacher residence without the
effective consent of the owner, and thereafter caused the death of Vince Simnacher. What
Appellant disputes is whether the evidence is legally sufficient to establish that he entered
the residence with the intent to (1) cause bodily injury, (2) threaten to cause imminent
bodily injury, or (3) make offensive physical contact with Vince Simnacher, Rhonda
Kitchens, or any other party guest in attendance. In that regard, the evidence shows that
Appellant was upset about his divorce from Rhonda and her involvement with Vince, that
he was aware that both Rhonda and Vince were at the Simnacher residence, and that he
was angry about there being a party to "celebrate" the anniversary of their divorce. The
testimony of Teresa Raylene Ott indicates that Appellant had previously threatened to kill
Vince Simnacher. She further testified that on the night of the shooting, she had spoke
with Appellant by telephone and quoted him as saying, "I ought to come over there and kill
every mother fucking one of y'all." Another person present at the time of the shooting,
William Welch, also quoted Appellant as saying, "You son (sic) of bitches didn't think I
would do it," as he began to shoot. Even if the State were required to establish that the
intended victim of the assault was someone other than Vince Simnacher, the evidence was
legally sufficient to support the jury's verdict. Appellant's third issue is overruled.

Conclusion


 Accordingly, having overruled Appellant's three issues, we affirm the trial court's
judgment.


 Patrick A. Pirtle 

 Justice


Publish.







"false" Priority="68" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Grid 2 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0184-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL B

 

MAY 19, 2010

______________________________

 

AIM-EX INDUSTRY, INC., 

 

                                                                                                            Appellant

 

v.

 

JASON SLOVER AND STEPHANIE SLOVER, Individually 

                                                and as Next Friends of L.S., Minor Child, 

 

                                                                                                            Appellees

_______________________________

 

FROM THE 72nd DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2007-539,883; HON. RUBEN REYES, PRESIDING

_______________________________

 

Memorandum
Opinion

_______________________________

 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

            Aim-Ex
Industry, Inc. (Aim-Ex) appeals from a default judgment entered against it in
favor of Jason and Stephanie Slover, individually and as next friends of their
son L.S., a minor (the Slovers).  Aim-Ex
contends that the trial court erred in entering the default judgment and
denying its motion for new trial since 1) it met the requirements of Craddock
v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124 (1939), 2) the
Slovers failed to present evidence of a specific manufacturing defect, 3) no
evidence supported the award of punitive damages, 4) no evidence supported the
award of future damages, and 5) the award of damages for past medical expenses
should have been adjusted for any discount received by the Slovers.  We affirm in part and reverse and remand in
part. 

            Background

            On July 3, 2007, the Slovers filed a
lawsuit seeking damages for personal injuries received by their seven-year-old
son while driving an all terrain vehicle (ATV) manufactured in China.  They did not originally name Aim-Ex as a
defendant but amended their petition on February 11, 2008, to do so.  The defendant was a foreign corporation and
service was perfected on it via the Texas Secretary of State on March 4, 2008.  A copy of the same was then forwarded by
certified mail on March 11, 2008, to Aim-Ex at its California address.  A return receipt bearing the Signature of
Addressees Agent was received by the Secretary of State on March 13, 2008.  

            Approximately
a year later, that is, on March 4, 2009, the Slovers moved for default judgment
against Aim-Ex because it had yet to file an answer or otherwise appear.  That judgment was entered on March 13, 2009,
after which Aim-Ex timely moved for a new trial.  The trial court denied the latter.

             Issue 1 - Denial of Motion for New Trial

            Initially, Aim-Ex asserts that the
trial court erred in denying its motion for new trial because it satisfied the
requirements established in Craddock v.
Sunshine Bus Lines, Inc.  We disagree
and overrule the point.  

            Per
Craddock, one seeking to overturn a
default judgment due to his failure to appear or answer must illustrate that 1)
such failure was neither intentional nor the result of conscious indifference
but rather arose from accident or mistake, 2) he has a meritorious defense, and
3) granting the motion would cause neither delay nor injury to the
plaintiff.  Dolgencorp of Texas, Inc.
v. Lerma, 288 S.W.3d 922, 925 (Tex. 2009) (discussing the requirements of Craddock
v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124 (1939)).  Moreover, in determining whether one acted
intentionally or with conscious indifference, we examine the knowledge and acts
of the party who failed to appear.  In
re K.A.R., 171 S.W.3d 705, 717 (Tex. App.Houston [14th Dist.]
2005, no pet.).  And, included within
that scope are the acts of both the actual party and its agent; in other words,
it must be shown that both the party and its agent, if any, are free of
conscious indifference.  Estate of
Pollack v. McMurrey, 858 S.W.2d 388, 391 (Tex. 1993).  Finally, the excuse proffered need not be a
good one so long as it evinces something other than intentional or consciously
indifferent conduct.  Jaco
v. Rivera, 278 S.W.3d 867, 872 (Tex. App.Houston [14th
Dist.] 2009, no pet.).  

            At bar, Aim-Ex
contends that it did not appear or answer because opposing counsel failed to
inform it that citation had been served despite its inquiries into the matter.  Because it failed to appear at the hearing on
its motion for new trial, the only evidence allegedly supporting the contention
appears in the affidavit proffered with its motion.  Therein, the affiant explains that he is an
associate in the law firm of Aim-Ex counsel and that he was instructed, on January
16, 2009, to call the Slovers counsel to determine if service had been
effected upon Aim-Ex.  By that time,
service had already been perfected for about ten months.  He further explained that opposing counsel
failed to respond to his messages, that he called the district clerk to see if
a return of service had been filed, that the clerk said it had not, that he
drafted and mailed a letter to the Slovers counsel asking that he be notified
when service was effectuated, and that opposing counsel again did not notify
him.  Instead, Aim-Ex notified its
counsel in the latter part of March 2009 that a default judgment had been
entered.  Missing from this utterance,
and the entire record for that matter, is evidence illustrating what, if anything,
Aim-Ex did during the twelve months between service and entry of the default
judgment.  Nothing explains why Aim-Ex
never informed its attorney about receiving citation.  Nothing explains whether that company lost
the citation, misplaced it, attempted to forward it to its counsel, or simply
disregarded it.  

            Nor does Aim-Ex
contend that service upon the Secretary of State was improper, question the
accuracy of the address to which notice was sent, posit that the person who
signed the return receipt was not its agent, or suggest that it did not receive
the notice.  See Munoz v. Rivera,
225 S.W.3d 23, 28 (Tex. App.El Paso 2005, no pet.) (holding the defendant
failed to establish he did not receive notice of the trial setting when the
record showed the notice was sent and received).  Again, the nature of the mistake that caused
the default must be explained.  Sheraton
Homes, Inc. v. Shipley, 137 S.W.3d 379, 381 (Tex. App.Dallas 2004, no
pet.).  And, because the evidence of
record omits reference to the conduct of Aim-Ex (as opposed to its attorneys),
it failed to meet its burden.  See
Scenic Mountain Medical Center v. Castillo, 162 S.W.3d 587, 590 (Tex. App.El
Paso 2005, no pet.) (finding that the defendant did not meet its burden when
the witness established that she did not know the reason for the failure to
file an answer by the corporate office and testified that she did not know if
the failure was the result of intentional or consciously indifferent
conduct).        

            Issue 2 -
Evidence of a Defect

            Next, Aim-Ex asserts there was no
evidence of a manufacturing defect in the ATV that would support liability.  We overrule the issue.

            A no
answer default judgment admits all of the facts properly pled in a petition
except unliquidated damages.[1] 
Dolgencorp of Texas, Inc. v. Lerma, 288 S.W.3d at 930.  One of those facts being the existence of a
defect, it too was admitted.  Therefore,
Aim-Ex may not challenge on appeal that aspect of liability.  Fleming Mfg. Co. v. Capitol Brick, Inc., 734
S.W.2d 405, 408 (Tex. App.Austin 1987, writ refd n.r.e.).   

            Issue 3 -
Punitive Damages

            Aim-Ex also challenges the award of
punitive damages because it contends that there was no evidence of gross
negligence on its part.  We overrule the issue
for the default judgment relieved the Slovers from establishing their
opponents gross negligence.  That is,
gross negligence was effectively admitted due to the default; so, the Slovers did
not have to proffer evidence of it.  Folsom Inv., Inc. v. Troutz, 632 S.W.2d
872, 877 (Tex. App.Fort Worth 1982, writ refd n.r.e.).  This is not to say that the amount of
punitive damages awarded should go unaffected. 
Reversing the trial courts award of actual damages could result in the
reversal of the exemplary damage award.  Id. (wherein the sum allotted for
punitive damages was reversed because a new trial was required on the issue of
actual damages).  Indeed, because the
ratio between the amount of actual and punitive damages awarded is an indicia
to consider in assessing the validity of the punitive sum, In re Bradle, 83 S.W.3d 923, 928 (Tex. App.Austin 2002, no pet.),
it seems only appropriate to have the quantum retried if actual damages are to
be retried.  

            Issue 4 -
Future Damages

            The award of actual damages is also
contested by Aim-Ex.  We sustain the
issue in part.

            The trial
court awarded the sum of $1,300,000 as total damages.  That sum appears to be comprised of
approximately $300,000 for past medical expense, $350,000 in other non-itemized
damages, and $650,000 in punitive damages. 
Whether this is actually true is unknown since no findings were entered
on the matter.  Nor were the components
of the $1,300,000 itemized in the judgment. 
Furthermore, the total could have consisted of payment for past and future
medical expense, past and future pain and mental anguish, past and future wage
loss, past and future physical disfigurement, and punitive damages since all
were sought via the live pleading.  And,
therein lies the problem because while there is some evidence supporting the
award of damages for certain of those losses, there was no evidence supporting
the award to recompense at least one loss, i.e.
future medical expense.  

            A
plaintiff has the burden of showing a reasonable probability that medical
expenses will be incurred in the future. 
Sanmina-SCI Corp. v. Ogburn, 153 S.W.3d 639, 642 (Tex. App.Dallas
2004, pet. denied).  To be probable, the
expenses must be more likely than not to occur. 
Pilgrims Pride Corp. v. Smoak, 134 S.W.3d 880, 905 (Tex.
App.Texarkana 2004, pet. denied).      

            Here,
Stephanie Slover testified that her son currently had no medical appointments
scheduled though he may need medical care in the future.  But she also conceded that he may not need
later medical help.  The mere chance of
needing future medical care (as exemplified in the circumstances before us) is
not sufficient to meet the necessary quantum of evidence.  Id. at 906.  Thus, any award to recompense for such loss
would be improper, given the record before us. 
Because of this, the fact that an award for future medical expense was
requested via the pleadings and at the default hearing, and the lack of any
attempt to itemize or segregate what sums of money, if any, were allotted to
the myriad types of damage sought, we cannot but reverse and remand the actual
damages awarded.[2] 
Tex. Indus., Inc. v. Vaughn, 919
S.W.2d 798, 804 (Tex. App.Houston [14th Dist.] 1996, no writ); accord, Whitaker v. Rose, 218 S.W.3d 216, 224 (Tex. App.Houston [14th
Dist.] 2007, no pet.) (holding that when a default judgment specifies a single
damage award based on more than one damage element and there is no evidence to
support the award as to one of the elements, then the entire award must be
reversed and remanded even though one of the other elements might be sufficient
to support the award).  

            Accordingly,
we affirm the judgment with respect to liability and reverse and remand for a
new trial on the issue of damages. 
Excluded from the latter, however, is the question of whether Aim-Ex was
grossly negligent; that will not be retried for it was admitted.  See
Folsom Inv. Inc. v. Troutz, 632 S.W.2d at 877 (wherein all issues of damage
were remanded but the question of the defendants gross negligence was not).  

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

            

                











[1]Aim-Ex
does not allege on appeal that the cause of action was not properly pled. 





[2]This
relieves us from having to address the last issue before us.  Since the matter of damages is to be retried,
we need not determine if the trial court erred in not discounting the damages
for past medical care by an adjustment to the medical bills.