Eric BRANHAM, Appellant,

v.

Michael Joseph BROWN, Joseph M. Brown, Victoria Asset Management, Inc., d/b/a Forest Cove Apartments, Bradley Apartment Homes, and Allied Development Corporation, Appellees.

No. 01–95–00763–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 20, 1996.

Robert D. Bates, Houston, for appellant.

Ruben Hope, Kenna M. Seiler, Conroe, for appellees.

Before HUTSON-DUNN, MIRABAL and HEDGES, JJ.

## OPINION

HUTSON-DUNN, Justice.

This is a suit for damages for personal injuries arising from a motor vehicle accident involving a motorcycle driven by Eric Branham, appellant, and a pick-up truck driven by Michael Joseph Brown, appellee.

Branham filed suit for his personal injuries against Michael Joseph Brown (Brown), the driver of the truck, alleging negligence, and Joseph M. Brown, the owner of the truck, alleging negligent entrustment. Branham also sued Victoria Asset Management, Inc., d/b/a Forest Cove Apartments, Bradley Apartment Homes, and Allied Development Corporation, alleging that Brown was in the course and scope of his employment at the time of the accident. All appellees answered, alleging that Branham was contributorily negligent. Before trial, Joseph M. Brown was nonsuited.

The suit was tried to a jury. The jury returned a verdict finding Branham 51% negligent and Brown 49% negligent. The trial court entered a take-nothing judgment against Branham based on the jury's find-ings. Branham filed a motion for new trial, which the trial court denied. In four points of error, Branham appeals the take-nothing judgment rendered against him complaining of jury misconduct and the admission and exclusion of evidence. We affirm.

In his first and second points of error, Branham argues the trial court erred in denying his motion for new trial and motion for mistrial based upon jury misconduct and trial court misconduct. After deliberating, the jury announced that it had reached a verdict. The foreman advised the court that the verdict had been signed by 11 jurors. The court then noted that the foreman had incorrectly signed the verdict form indicating that it was a unanimous verdict. The trial judge, after making an inquiry, instructed the foreman that he should scratch out his name if it was not a unanimous verdict, which he did. The 11–1 verdict reflected the jury's finding that Branham was 51% negligent and Brown was 49% negligent. The jury also found that Brown was in the course and scope of his employment at the time of the accident. At Branham's request, the jury was polled and 11 jurors indicated this was their verdict, and one juror indicated that she had not signed the verdict. The court then accepted the jury's verdict.

Afterwards, the trial judge, in a short discussion, stressed his appreciation of the jury's hard work in reaching the verdict, indicating that the parties had been unable, through mediation, to dispose of this lawsuit. The court also noted that this was a case of serious injuries and he was sure that the jury had difficulties in deciding this case. The trial judge then discharged the jurors from service and released them from his prior admonishments. Immediately after, the trial judge informed the jurors that this was the first time he had a jury in this particular courtroom, and he invited them back to his chambers so that he could personally greet them. He additionally invited the parties and attorneys to remain in the courtroom so that the jurors could ask them any questions they wanted.

The record reflects that immediately after the judge and jurors entered into the judge's

chambers, and while the judge was still greeting the jurors, one juror volunteered that she made a mistake during the polling because she had mistakenly signed the verdict because of a misunderstanding. The trial judge immediately stopped the conversation and informed the attorneys. After discussing the situation with the attorneys, the judge instructed the jury to return to the jury room and sign the verdict in accordance with each juror's own decision.[1] The jury later sent out a note questioning whether the percentage of negligence had to be unanimous. The court instructed the jurors to re-read certain instructions in the charge and continue to deliberate. After further deliberations, the jury returned and announced its verdict. The verdict, which was signed by ten jurors, found Branham to be 51% negligent and Brown 49% negligent. The court accepted this verdict, and judgment was entered on the 10–2 jury verdict.

Branham contends that it was misconduct for the judge to have accepted the jury's verdict, have spoken with the jury afterwards in his chambers, and then have sent the jury back to "redeliberate." He argues it was error for the court to deny him a mistrial or a new trial based on this misconduct. When jurors affirm their verdict in open court and the verdict is received, it acquires the finality of an official act. *Sims v. State Farm Fire & Cas. Co.,* 720 S.W.2d 273, 274–75 (Tex.App.—Fort Worth 1986, no writ); *Jones v. Square Deal Cab Co.,* 501 S.W.2d 746, 747–48 (Tex.Civ.App.—Houston [14th Dist.] 1973), *writ ref'd n.r.e. per curiam,* 506 S.W.2d 855 (Tex.1974). The court held in *Jones:*

> We hold that when a jury returns a verdict as being unanimous and the verdict is officially received by the court and the jury is discharged, it is not permissible to thereafter impeach the verdict by presenting evidence that such verdict was not unanimous. If a nonunanimous verdict had been returned and had been officially received by the court and the jury had been discharged, such a nonunanimous verdict would not thereafter be subject to impeachment by presenting evidence that different 'shifting' majorities answered the special issues. . . .

*Jones,* 501 S.W.2d at 748. That finality is not destroyed by proof that jurors answered 'Yes' but believed 'No.' *State v. Finch,* 349 S.W.2d 780, 782–83 (Tex.Civ.App.—San Antonio 1961, no writ). A juror's doubts and misgivings, uncertainty, hesitancy, and mental reservations about the verdict do not destroy a verdict. *Id.; see also Van Wart v. Van Wart,* 501 S.W.2d 359, 362 (Tex.Civ.App.—Austin 1973, no writ). It is not destroyed by proof that a juror is not satisfied with the verdict; that the verdict was reached against a juror's better judgment; that the verdict was the result of a compromise; or that the juror voted with the majority under protest. *Finch,* 349 S.W.2d at 782–83. The purpose of the poll, under the protection of the court, is to afford jurors an opportunity to express their true convictions. *Id.* They should speak at that time and not after they have been discharged and have mingled with the public. Thus, after a verdict is returned and is officially received by the court and the jury is discharged, it is not permissible to thereafter establish jury misconduct and impeach the verdict by presenting evidence that the verdict was not unanimous or that a nonunanimous verdict was returned by different "shifting" majorities. *Jones,* 501 S.W.2d at 748.

In our case, after the foreman of the jury in this case announced its verdict to the court, the jury was polled at appellant's request and the trial court discharged the jury. After the jury was discharged, the judge and the jury had a meeting in the judge's chambers, after which the judge returned and announced he was not receiving the verdict until the jurors redeliberated. However, once the judge had accepted the verdict and discharged the jury, he had no authority to later order the jury to redeliberate; he should have proceeded to judgment on the original 11–1 verdict. Therefore, we hold that the trial court erred in sending the jury back to make any corrections or redeliberate on their verdict after the trial court accepted the verdict and discharged the jury.

---

**1.** Branham's attorney made several motions for a mistrial, but the trial court denied them.

We will address Branham's complaints of jury misconduct as they relate to the 11–1 jury verdict. Branham argues there was jury misconduct; however, we consider it only insofar as it concerns the original 11–1 verdict. To obtain a new trial on the basis of jury misconduct, the complaining party must show that (1) the misconduct occurred; (2) it was material; and (3) the misconduct resulted in harm. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex.1985); *Perry v. Safeco Ins. Co.*, 821 S.W.2d 279, 280–81 (Tex.App.—Houston [1st Dist.] 1991, writ denied). After reviewing the record, we find there was no evidence or testimony before the trial court of any overt act of misconduct. There was no testimony that the conduct of the foreman or any of the jurors caused the members of the jury to reach a verdict different from what they would have otherwise reached. If there was some reservation to the contrary in the mind of some juror, it cannot now be considered. The trial court polled the jury, all the jurors but one assented, and the judge received the verdict. Without a showing in the record of any improper outside influence, we hold appellant did not meet his burden of showing jury misconduct.

Further, Branham argues the trial court erred in accepting the jury's first verdict because the polling of the jury did not conform to the jury's written verdict form. When the jury was polled, all 12 jurors indicated that it was their verdict. Since only 11 jurors had signed the verdict form, the trial judge inquired as to whether the verdict was unanimous or 11–1. One juror responded:

Juror: I think I didn't sign it.

Another juror: Yeah, she did not agree.

Juror: I don't think it was on purpose though. I'm lost here.

Court: I'm not lost. If you didn't agree, you don't have to sign it. As a matter of fact, you are prohibited from signing it unless this is your verdict.

Juror: Oh, okay.

Court: So, this is not your verdict?

Juror: Correct.

After that exchange, the court asked the attorneys if they were satisfied with the jury polling, to which counsel answered they were. Contrary to Branham's contention, the polling of the jury did conform to the jury's written verdict. The juror who did not sign the verdict form was just confused by the trial court when asked if it was his verdict. The juror did not sign the verdict because the juror did not agree with it. That did not change after the jury was polled. The fact that one juror was confused during the polling does not invalidate the verdict. Branham has not met his burden in showing there was any jury misconduct in arriving at the 11–1 verdict. Therefore, we hold it was not error for the trial court to deny Branham's motion for a mistrial and motion for new trial. We overrule Branham's first and second points of error.

In his third point of error, Branham contends the trial court erred in allowing the defense reconstruction expert to testify concerning evidence and opinions not provided to plaintiffs in response to the discovery requests.

Brown called Dr. Mike Emil James, Jr., as an accident reconstruction expert. At trial, James testified about calculations and measurements that he made concerning the crime scene and the speed of the cars involved in the accident. According to James' testimony, he had prepared a scale model and calculated the speed of the cars two days before trial. Branham objected to James' testimony, asserting that these "calculations" were not provided to him in response to discovery, and he took James on voir dire.

Plaintiff: Sir, [James] when did you go out and take the measurements?

James: I took the measurements on December—I believe it was the 9th of '93.

Plaintiff: Did you make any drawings at that time?

James: I made drawings that are field notes that you have that were sent to you, and this is just a scale drawing of those field notes.

. . . .

Plaintiff: We'll take a look at the document that I have in my hand. These are the documents that you understand have

been requested and produced; is that correct?

James: That is my understanding, yes sir.

Plaintiff: Okay. Have you done any other calculations above and beyond the documents that I hold in my hand? In writing?

James: No sir, not to be reduced to paper.

Plaintiff: So, since December 1993 you have not written one note nor made one calculation in writing on this case?

James: Not until the last two or three days. I made these—I took the notes that you have right there and reduced them to a scale drawing.

Plaintiff: When did you begin that process?

James: Day before yesterday.

Branham contends those calculations concerned speed and acceleration, and because they had not previously been tendered to him before trial, the trial court erred in allowing James to testify about the calculations.

 The general rule in Texas is that a party must make a full and complete response to proper discovery requests, and this obligation includes the duty to timely supplement discovery at least 30 days before trial. Tex.R. Civ. P. 166b(6). This duty to supplement especially applies to information concerning expert witnesses, and the trial court should exclude the testimony of an expert witness when the duty to supplement has been violated. Tex.R. Civ. P. 215(5)[2]; *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992). However, our rules do not prevent experts from refining calculations and perfecting reports through the time of trial. *Exxon Corp. v. West Texas Gathering Co.*, 868 S.W.2d 299, 304–305 (Tex.1993). The testimony of an expert should not be barred because a change in some minor detail of the person's work has not been disclosed before trial. *Id.; Navistar Int'l Transp. Corp. v. Crim Truck & Tractor Co.*, 883 S.W.2d 687, 692 (Tex.App.—Texarkana 1994, writ denied).

When Branham objected at trial to James testifying about his opinions regarding speed, point of impact, and relative location of the vehicles at various points during the accident, defense counsel responded:

We've got a diagram that we sent them earlier, and we just took that diagram and put it to scale is what it amounts to, your Honor.... That's been provided as far as I can understand, Judge. What they asked for is what I gave them as to what Dr. James had including a diagram that was not to scale that's got all of these things on that diagram.

Furthermore, the court noted:

These are nothing more than simple arithmetic operations. I mean you could do this in your head sitting right here in five seconds. So I'm not concerned about him doing any arithmetic on you. They are simple mathematical formulas that are taught in Engineering 101. The change of distance with respect to time is called speed. The change of speed with respect to time is called acceleration. And those are elementary terms that we're all charged with knowing.

These simple calculations were made by Dr. James the night before he testified. All he did was reduce an already-submitted document to scale and perform simple mathematical calculations. If he had not made the calculations before trial, he could have made them on a blackboard in front of the jury. The diagrams were all timely submitted to Branham. Based on all these circumstances, we cannot say that the trial court abused its discretion in allowing Dr. James to testify about the speed, point of impact and relative locations of the vehicles throughout the accident. We overrule Branham's third point of error.

 In his fourth point of error, Branham contends the trial court erred in not allowing his expert witness to testify about economic damages that were not disclosed to

**2.** Rule 215(5) provides:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a re-

sponse or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists.

the defendants in discovery. Brown objected to calculations made by Roy Gilbert, the economic expert, as to the amount of Branham's minimum base wages because those calculations were not provided to him in response to a discovery request. Brown also objected to testimony as to the present value of future medical costs because those calculations were not provided to Brown, either. Gilbert was prohibited from testifying beyond the four corners of his report as to calculations not contained in the report.

A party objecting to the exclusion of evidence not properly identified in discovery must show the trial court abused its discretion in excluding the evidence. *Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex. 1994). If the trial court has excluded testimony, the proponent of the evidence must show through a bill of exceptions that the evidence was controlling on a material issue in the case and it was not cumulative. *Id.; Morris v. Short,* 902 S.W.2d 566, 570 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Failure to do so will result in waiver. *Damian v. State,* 881 S.W.2d 102, 116 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). The record before us contains no bill of exceptions indicating what the excluded testimony would have been. Branham has not presented the error for review. We overrule Branham's fourth point of error.

We reform the judgment of the trial court to include judgment rendered on the original 11–1 verdict of the jury, and as reformed, we affirm.