In re Michael R. BRADLE, Individually and as Trustee of the Mildred Roemer Irrevocable Trust.

No. 03–02–00376–CV.

Court of Appeals of Texas, Austin.

Aug. 16, 2002.

Derek R. Van Gilder, Robert Wells, Law Offices of Derek R. Van Gilder, Bastrop, for Real Party in Interest, Rosiland Roemer.

Hamilton Rial, James Noble Johnson, Kuperman, Orr, Mouer & Albers, P.C., Austin, Will Allen, Grant E. Adami III, Adami, Goldman & Shuffield, San Antonio, for Relator, Michael R. Bradle.

Ernest F. Bogart, Owen, Jones, Bogart & Rogers, Elgin, David Deaderick, Grove, Ehlinger & Deaderick, Austin, for G.D. Warner & T. Warner.

Before Chief Justice ABOUSSIE, Justices KIDD and YEAKEL.

MACK KIDD, Justice.

Relator, Michael R. Bradle, Individually and as Trustee of the Mildred Roemer Trust, seeks mandamus relief from an order by the district court effectively requiring the punitive damages portion of a lawsuit to be tried to an entirely different jury than the one that determined the liability and actual damage issues in the case. We hold that the district court abused its discretion in so ordering, and we will conditionally grant the writ.

## PROCEDURAL BACKGROUND

Bradle timely filed a pretrial motion to bifurcate the punitive damages portion of the case below.[1] In the liability phase of the case, the jury returned a verdict favorable to the plaintiff and real party-in-interest, Rosiland Roemer, on her claim against Bradle for conversion. The jury found against Roemer on her claims against other defendants and on other claims against Bradle. It is the jury's affirmative findings on Roemer's conversion claim, and the corollary issue of malice, that is the subject of this proceeding. These are the only findings that constituted a predicate to the adjudication of the punitive damages claim.

The original jury in this case returned its ten-two verdict on March 28, 2002. It found that Bradle committed the tort of conversion against Roemer and that the value of the personal property converted was $23,000. The jury also found Bradle to have acted maliciously in connection with the conversion claim. The amount, if any, of punitive damages was not submitted to the jury with the remainder of the case because the court granted Bradle's motion to bifurcate the trial on the punitive damages issue.

After the verdict was returned, Roemer filed a "Plaintiff's Motion for a 'Phase Two' Exemplary Damage Trial or for a New Trial" complaining that because the district court "dismissed the jury," it "preempt[ed] Phase Two of the trial, in which the jury would have heard evidence on what is relevant only to the amount of exemplary damages." On June 6, 2002, the district court signed a "final" judgment which, among other things, disposed of the claims against the other defendants, but severed the conversion claim against Bradle. The judgment provides:

the jury verdict having been received and accepted by the Court without objection by any party, it is the Court's opinion that [Bradle is] entitled to a separate trial on the issue of punitive damages. IT IS THEREFORE ORDERED that, as to [Bradle], a separate trial shall be conducted for the purpose of determining the amount of punitive damages, if any.

. . . .

IT IS FURTHER ORDERED that [Roemer] have judgment against [Bradle], jointly and severally, in the amount of $23,000.00 actual damages for conversion.

. . . .

IT IS THEREFORE ORDERED that all claims asserted herein against [Bradle], be and the same are hereby SEVERED and are ordered to be docketed under separate cause number. This severance specifically includes all portion [sic] of this judgment that related to claims against the said [Bradle]. The Clerk of the Court is hereby ORDERED to docket said cause ... under Cause No. 22,865–B. ... All judgments in these severed claims against [Bradle],

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.009 (West 1997); *Transportation Ins. Co.* *v. Moriel,* 879 S.W.2d 10, 30 (Tex.1994).

shall remain interlocutory until such time as a separate trial has been conducted on the issue of the amount, if any, of punitive damages to be awarded to [Roemer]. . . .

It is undisputed that the jury's verdict was received and accepted by the district court without objection; thereafter, the jury was discharged, again without objection. Currently, a separate trial on punitive damages is set to be heard by a second jury on September 23, 2002. Bradle seeks mandamus relief from this Court.

## DISCUSSION

 An appellate court issues a writ of mandamus to correct a clear abuse of discretion when there is no adequate remedy at law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). A court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Id.; In re Wallingford,* 64 S.W.3d 22, 24 (Tex.App.-Austin 1999, orig. proceeding). Trial courts are accorded little discretion in deciding legal matters, and mandamus will lie to remedy a clear failure by the trial court to analyze and apply the law correctly. *See Walker,* 827 S.W.2d at 840. Here, the district court clearly misapplied the applicable law in this case.

When the supreme court first announced the scheme for bifurcated trials in cases involving punitive damages, it said:

We therefore conclude that a trial court, if presented with a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues. . . . Under this approach, the jury first hears evidence relevant to liability for actual damages, the amount of actual damages, and liability for punitive damages . . . , and then returns findings on these issues. If the jury answers the punitive damage liability question in the plaintiff's favor, *the same jury is then presented evidence* relevant only to the amount of punitive damages, and determines the proper amount of punitive damages, *considering the totality of the evidence presented at both phases of the trial.*

*Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 30 (Tex.1994) (emphasis added). The Legislature subsequently enacted chapter 41 of the Texas Civil Practices and Remedies Code which essentially codified *Moriel,* among other things. Section 41.009 of the statute provides in relevant part:

(a) On motion by a defendant, the court shall provide for a bifurcated trial under this section. . . .

. . . .

(b) In the first phase of a bifurcated trial, the trier of fact shall determine:

(a) liability for compensatory and exemplary damages; and

(b) the amount of compensatory damages.

(c) If liability for exemplary damages is established during the first phase of a bifurcated trial, the trier of fact shall, in the second phase of the trial, determine the amount of exemplary damages to be awarded, if any.

Tex. Civ. Prac. & Rem.Code Ann. § 41.009(a) (West 1997).

 Although this is a case of first impression, the result appears to be clear. *Moriel* expressly, and section 41.009 implicitly, mandates that the same jury that hears the liability phase of a case must also hear the punitive damages phase. The district court's order requiring the punitive damages to be tried to a different jury violates both *Moriel* and section

41.009(a).[2] The district court clearly abused its discretion in ordering a second jury.

■■■ Each party has a duty when a jury returns a verdict to promptly examine the verdict before the jury is discharged. *See Pate v. Texline Feed Mills, Inc.*, 689 S.W.2d 238, 243 (Tex.App.-Amarillo 1985, writ ref'd n.r.e.). Here, it was Roemer's burden to raise the matter of the remaining assessment of punitive damages before the jury was discharged. Failure to object before the jury is discharged acts as a waiver of any untried issues. *See Fleet v. Fleet*, 711 S.W.2d 1, 3 (Tex.1986); *Continental Cas. Co. v. Street*, 379 S.W.2d 648, 650–51 (Tex.1964); *Lewis v. Texas Employers' Ins. Ass'n*, 151 Tex. 95, 246 S.W.2d 599, 601 (1952) ("If the trial judge was to correct the defect he had to do it before the jury was discharged.... Under our procedure a party dissatisfied with a verdict has ample opportunity to present the matter to the trial judge before the verdict is officially accepted and the jury discharged. He has the duty to do so."). It is undisputed that Roemer did not raise the issue and did not object to the jury's discharge.

■■■ When a verdict has been affirmed in open court, and the jury has separated and become accessible to the parties, the only remedy for a mistake in the verdict is setting aside the verdict and granting a new trial. *Wanda Petroleum Co. v. Reeves*, 385 S.W.2d 688, 690–91 (Tex. Civ.App.-Waco 1964, writ ref'd n.r.e.); *see also Burchfield v. Tanner*, 142 Tex. 404, 178 S.W.2d 681, 683 (1944). Once a jury is discharged from their oaths, they are subject to contact with and influence by the parties and others so that the jury cannot be reconstituted. *See Caylat v. Houston E. & W. Ry. Co.*, 113 Tex. 131, 252 S.W. 478, 482–83 (1923). In *Caylat*, the supreme court stated:

> "when the verdict has been affirmed in open court and the jury have separated and become accessible to the parties, the only remedy for a mistake is by setting the verdict aside and granting a new trial...." [3] [This rule] guards against any possible irreparable injury to the parties litigant, and satisfies every requirement of complete justice. The only consideration of public policy involved in denying a correction in a clear case of clerical mistake is the expense and delay incident to a new trial.... We are clearly of the view that the safer and more salutary rule is to deny a correction in such cases; and to order a new trial as the full measure of the relief against the mistake.

*Id.* This rule remains valid today. The court of appeals in *Branham v. Brown*, 925 S.W.2d 365 (Tex.App.-Houston [1st Dist.] 1996, no writ), held that:

> once the judge had accepted the verdict and discharged the jury, he had no authority to later order the jury to redeliberate; he should have proceeded to judgment on the original 11–1 verdict. Therefore, we hold that the trial court erred in sending the jury back to make any corrections or redeliberate on their verdict after the trial court accepted the verdict and discharged the jury.

*Id.* at 368. Once a jury has been discharged and has mingled with the public, it is error to reconvene that jury. *Id.*

■■■ Furthermore, requiring the punitive damages issue be tried to a jury

---

**2.** *See Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex.2000).

**3.** *Caylat v. Houston E. & W. Ry. Co.*, 113 Tex. 131, 252 S.W. 478, 482 (1923) (quoting and adopting rule in *Weston v. Gilmore*, 63 Me. 493, 1874 WL 3633 (Me.Ct.App.1874)).

different from the one that tried the liability and actual damages issues operates to abridge Bradle's fundamental constitutional rights to trial by jury and to due process. In Texas, a jury's verdict has a "special, significant sacredness and inviolability." *Crawford v. Standard Fire Ins. Co.*, 779 S.W.2d 935, 941 (Tex.App.-Beaumont 1989, no writ). The Texas Constitution requires that the right to trial by jury remain inviolate. Tex. Const., art. I, § 15 (1984); *Crawford*, 779 S.W.2d at 941. There is no indication in the record that the original jury was not validly constituted and impaneled. It heard all the evidence in this case, except the admissible evidence to be offered only during the punitive damages phase of the case. The plaintiff allowed the original jury's verdict to be returned and accepted and the jury discharged without objection. We hold that requiring a different jury to determine punitive damages violates Bradle's right to trial by the jury lawfully chosen and impaneled to try this case. Denial of the constitutional right to trial by jury amounts to an abuse of discretion for which a new trial is the only remedy. *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex.1995).

 In addition, we hold that requiring that a different jury determine punitive damages violates Bradle's right to due process as recognized in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); and *Moriel*, 879 S.W.2d at 30. The district court's order effectively means that the amount of punitive damages will be tried and determined in isolation from the liability and actual damages aspects of the case.

 The imposition of "grossly excessive" punitive damages on a tortfeasor violates the Due Process Clause of the Fourteenth Amendment. *Gore*, 517 U.S. at 562, 116 S.Ct. 1589. Proportionality between the amount of punitive damages assessed and the liability facts and actual damages suffered is the "most important indicium of reasonableness" when determining whether a punitive damage award is constitutional. *Id.* at 575, 116 S.Ct. 1589; *see also Haslip*, 499 U.S. at 21, 111 S.Ct. 1032. Punitive damages are not designed to compensate or enrich, instead their purpose is to punish "outrageous, malicious, or otherwise morally culpable conduct" and to deter others from committing the same or similar conduct in the future. *Gore*, 517 U.S. at 568, 116 S.Ct. 1589. Special emphasis is placed on the principle that punitive damages may not be disproportionally greater than the gravity and severity of the misconduct in issue and the injury sustained. *Id.* at 576, 116 S.Ct. 1589.

 In Texas, proportionality is achieved by having punitive damages assessed based on a *totality of the evidence* from both phases of the bifurcated trial. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex.2000). A jury assessing the amount of punitive damages must necessarily know of and consider the severity of the wrongdoing and the extent of actual damages. *Id.; see also Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981) ("Factors to consider in determining whether an award of exemplary damages is reasonable include (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety.").[4]

---

4. The *Kraus* factors have been approved as jury instructions to be given in punitive dam-

The same jury must, therefore, sit in both phases of the trial.

In *Bernal,* the supreme court struck down a class certification, in part, because the trial court's litigation plan allowed the issue of punitive damages to be tried before issues of causation and actual damages, and required the jury to assess punitive damages before it heard the "totality of the evidence." *Bernal,* 22 S.W.3d at 433. The plan was defective because its structure did not ensure that punitive damages would have some understandable relationship to the severity of the offense and the amount of actual damage. *Id.*

The district court in this case did not grant a new trial; it granted judgment on the jury's verdict for actual damages against Bradle on the conversion claim. The issues of liability and actual damages would not remain to be retried in the second trial. Therefore, any second jury considering exemplary damages would probably not have the benefit of the totality of the evidence in undertaking its deliberations.

## CONCLUSION

For the reasons set forth above, we conditionally grant the writ of mandamus and instruct the district court to vacate its order of June 6, 2002, to the extent that it orders a separate trial of the issue of punitive damages by a second jury after discharge of the original jury.

age jury charge submissions. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 40

