ACCEPTED
08-20-00015-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
3/15/2021 10:58 AM
ELIZABETH G. FLORES
CLERK

08-20-00015-CV

Case No. 08-20-00015-CV

In The Eighth Court Of Appeals
El Paso, Texas

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS

3/15/2021 10:58:20 AM

ELIZABETH G. FLORES
Clerk

Jorge L. Hernandez,

Appellant

v.

King Aerospace,

Appellee

*On Appeal from Cause No. 2017-DCV-0334*
*In the County Court at Law No. 3*
*Hon. Javier Álvarez, Presiding*

## APPELLANT'S REPLY BRIEF

Catherine M. Stone
State Bar No.19286000
cstone@langleybanack.com
Otto S. Good
State Bar No. 08139600
ogood@langleybanack.com
Ruben Valadez
State Bar No. 00797588
rvaladez@langleybanack.com

Langley & Banack, Inc.
Trinity Plaza II, Suite 700
745 E. Mulberry Avenue
San Antonio, Texas 78212
(210) 736-6600 – Telephone
(210) 735-6889 – Telecopy

Attorneys for Appellant
Jorge L. Hernandez

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................ii

ARGUMENT.............................................................................1

    I.      The trial court did not direct the jury to return a
           verdict; it overturned the verdict the jury returned. ..............1

        A. Granting a JNOV in the absence of a written
          motion is not an acceptable practice in Texas......................2

        B.  The special master's report cannot change, nor
          did it purport to eliminate, the requirement that
          a written motion for JNOV is necessary to disregard
          a jury verdict. ..............................................................9

    II.    Hernandez preserved error by filing a motion for
           judgment on the verdict, which the trial court denied. ........11

    III.   The trial court's overturning the jury's verdict
           prejudiced Hernandez...........................................................14

    IV.   The evidence did not prove as a matter of law that
           Hernandez was King's employee. ........................................19

CERTIFICATE OF WORD COMPLIANCE ......................................................27

CERTIFICATE OF SERVICE ..................................................................27

i

# TABLE OF AUTHORITIES

## Cases

*4M Linen & Unif. Supply Co., Inc. v. W.P. Ballard & Co., Inc.*,
  793 S.W.2d 320 (Tex. App.—Houston [1st Dist.] 1990,
  writ denied ..................................................................................................4

*1986 Dodge 150 Pickup v. State,*
  129 S.W.3d 180 (Tex. App.—Texarkana 2004, no pet.) ........................7

*Allison v. State,*
  156 S.W.2d 527 (Tex. Crim. App. 1941) ..................................... *passim*

*Appellee's Br. at 18-19* (citing,
  111 S.W.3d 134 (Tex. 2003) ..........................................................22, 23

*Bywaters v. Gannon*,
  686 S.W.2d 593 (Tex. 1985) ..........................................................19, 20

*Carter v. State,*
  No. 05-96-00805-CR, 1998 WL 83799
  (Tex. App.—Dallas Feb. 24, 1998, no pet.)
  (not designated for publication) ...........................................................7

*City of San Benito v. Cantu,*
  831 S.W.2d 416 (Tex. App.—Corpus Christi 1992, no writ) .................5

*Connell v. Connell,*
  889 S.W.2d 534 (Tex. App.—San Antonio 1994, writ denied) ...............5

*Emerson v. Tunnell,*
  793 S.W.2d 947 (Tex. 1990) ..........................................................12, 14

*Garza v. Exel Logistics, Inc.,*
  161 S.W.3d 473 (Tex. 2005) ................................................................23

*Gibraltar Sav. Ass'n v. Watson*,
  683 S.W.2d 748 (Tex. App.—Houston [14th Dist.] 1984,
  no writ) ...............................................................................................4

*In re Bradle,*
  83 S.W.3d 923 (Tex. App.—Austin 2002, orig. proceeding) ......... *passim*

*In re John G. & Marie Stella Kenedy Mem'l Found.,*
  315 S.W.3d 519 (Tex. 2010) ................................................................16

*In the Interest of B.L.D.,*
  113 S.W.3d 340 (Tex. 2003) ................................................................11

*Jackson v. Axelrad,*
  221 S.W.3d 650 (Tex. 2007) ................................................................24

*Lamb v. Franklin,*
  976 S.W.2d 339 (Tex. App.–Amarillo 1998, no pet.) ............................3

*Newspapers, Inc. v. Love*,
380 S.W.2d 582 (Tex. 1964) ...............................................................24
*Olin Corp. v. Cargo Carriers, Inc.*,
673 S.W.2d 211 (Tex. App.–Houston [14th Dist.] 1984,
no writ) .................................................................................. 3, 6, 16, 18
*Pitman v. Lightfoot*,
937 S.W.2d 496 (Tex. App.—San Antonio 1996, writ denied) ...............4
*Port Elevator-Brownsville, L.L.C. v. Casados*,
358 S.W.3d 238 (Tex. 2012) ...............................................................24
*Robinson v. Humble Oil & Ref. Co.*,
301 S.W.2d 938 (Tex. Civ. App.—Texarkana 1957,
writ ref'd n.r.e.) .....................................................................................4
*Robles v. Mount Franklin Food, L.L.C.*,
591 S.W.3d 158 (Tex. App.—El Paso 2019, pet. denied) ...............23, 24
*Smith v. Safeway Stores*,
167 S.W.2d 1044 (Tex. Civ. App.—Fort Worth 1943, no writ) ..............8
*St. Paul Fire & Marine Ins. Co. v. Bjornson*,
831 S.W.2d 366 (Tex. App.—Tyler 1992, no writ) ........................ 15, 22
*State v. ADSS Properties, Inc.*,
878 S.W.2d 607 (Tex. App.—San Antonio 1994,
writ denied).................................................................................. 19, 20
*White v. White*,
172 S.W.2d 295 (Tex. 1943) ...............................................................20
*Wingfoot Enter. v. Alvarado*,
111 S.W.3d 134 (Tex. 2003) ..........................................................22, 23

## Rules

TEX. R. APP. P. 44.1.................................................................................15
TEX. R. CIV. P. 268 .................................................................................10
TEX. R. CIV. P. 301 ........................................................................ *passim*

## Other

BLACK'S LAW DICTIONARY (West 11th ed. 2019).......................................2

## I. The trial court did not direct the jury to return a verdict; it overturned the verdict the jury returned.

During the trial, the court warned King of the need to file a motion for judgment notwithstanding the verdict (JNOV) if King wanted to overturn the jury's verdict. *9 RR 28*. Having failed to heed the trial court's warning, King now tries to characterize the trial court's judgment as having directed the jury to return a verdict rather than having overturned the verdict the jury returned. *Appellee's Br. at x, 8, 10.*

But the trial court did not direct the jury to return a verdict, and whether a trial court should direct a jury to return a verdict becomes a moot point after the jury has already returned its verdict. In addition to the legal impediment against directing a jury to return a verdict after it has already reached one, it would be impossible as a practical matter to give any directions to jurors who have since left the building and are no longer directable. *Allison v. State,* 156 S.W.2d 527, 528 (Tex. Crim. App. 1941) (holding that "when the jury was discharged it lost its identity as a jury" so that any subsequent verdict would be a "nullity"); *In re Bradle*, 83 S.W.3d 923, 927 (Tex. App.—Austin 2002, orig. proceeding) ("Once a jury is discharged from their oaths, they are subject to contact

1

with and influence by the parties and others so that the jury cannot be reconstituted.").

The purpose of a directed verdict is to prevent the case from reaching the jury. BLACK'S LAW DICTIONARY (West 11th ed. 2019) (defining "directed verdict" as "[a] ruling by a trial judge taking a case from the jury"). That did not happen here. The trial court did not take the case from the jury, it submitted the case to the jurors, who returned a verdict.

In contrast, the purpose of a JNOV is to overturn the verdict the jury reached. BLACK'S LAW DICTIONARY (West 11th ed. 2019) (defining "judgment notwithstanding the verdict" as "[a] judgment entered for one party even though a jury verdict has been rendered for the opposing party"). And although the trial court entered a judgment contrary to the verdict rendered, what did not happen was the filing of a written motion for a JNOV, even though the trial court warned King it would need to do so if the case went to the jury, which it did. *9 RR 28*.

## A. Granting a JNOV in the absence of a written motion is not an acceptable practice in Texas.

King claims the failure to file a written motion for JNOV after the jury has returned its verdict is "an acceptable practice in Texas courts." *Appellee's Br. at 10*. To the contrary, Rule 301 provides that "upon

2

motion and reasonable notice" a trial court "may render judgment non obstante veredicto if a directed verdict would have been proper." TEX. R. CIV. P. 301. A trial court cannot disregard jury findings without a written request, thus a motion for JNOV must be in writing with notice to the parties. *See Lamb v. Franklin*, 976 S.W.2d 339, 343-44 (Tex. App.–Amarillo 1998, no pet.) (request to disregard jury verdict in motion for new trial is insufficient); *Olin Corp. v. Cargo Carriers, Inc.*, 673 S.W.2d 211, 213-14 (Tex. App.–Houston [14th Dist.] 1984, no writ) (JNOV on no evidence grounds requires written motion).

King cites cases in support of its claim that a written motion for JNOV was not required and that its earlier motion for directed verdict was sufficient to permit a JNOV. *Appellee's Br. at 10-11*. But reliance on the cited cases is unavailing because the impropriety of relying on a motion for directed verdict to overturn a jury's decision was not at issue in any of those cases.

The opinions on which King relies merely described the procedural posture of the litigation by observing that trial courts had announced they intended to withhold rulings on motions for directed verdict until after the jury's verdict; these cases did not hold that doing so was proper, nor could they make any such determination, because that issue

3

was not before those appellate courts. *Appellee's Br. at 11* (citing *Pitman v. Lightfoot*, 937 S.W.2d 496, 536 (Tex. App.—San Antonio 1996, writ denied); *4M Linen & Unif. Supply Co., Inc. v. W.P. Ballard & Co., Inc.*, 793 S.W.2d 320, 327 (Tex. App.—Houston [1st Dist.] 1990, writ denied); *Gibraltar Sav. Ass'n v. Watson*, 683 S.W.2d 748, 750 (Tex. App.—Houston [14th Dist.] 1984, no writ); and *Robinson v. Humble Oil & Ref. Co.*, 301 S.W.2d 938, 940 (Tex. Civ. App.—Texarkana 1957, writ ref'd n.r.e.)).

Furthermore, although the trial judge in *Gibraltar* took the defendants' motion for directed verdict "under advisement" and "carried [it] along with the case," stating he "wanted to hold any final decision thereon until he found out what the jury did," nevertheless, after he submitted the case to the jury, the defendants, unlike King, filed a "motion for judgment notwithstanding the verdict," which the trial judge denied. *Gibraltar,* 683 S.W.2d at 750.

Just as an appellate court's observation that a witness's answer constitutes hearsay does not equate to endorsing hearsay as an "acceptable practice" when the impropriety of that answer is not at issue, neither does an appellate court's noting that a trial court had announced its intention to rule on a motion for directed verdict after

4

receiving a jury verdict equate to authority for that court to do so when its action was not at issue. Regardless, the direct authority is the opposite: by definition, a ruling on a motion to direct the jury to return a verdict must occur before the jury has returned its verdict and has been discharged. *Allison*, 156 S.W.2d at 528; *Bradle*, 83 S.W.3d at 927; *cf. also City of San Benito v. Cantu*, 831 S.W.2d 416, 422 (Tex. App.—Corpus Christi 1992, no writ) ("To complain on appeal about a trial court's refusal to grant a directed verdict, the record must reflect that the defendant presented the motion and that the court ruled on the motion before the jury returned a verdict.").

If a litigant is entitled to a directed verdict, the trial court may: (1) "instruct the jury as to the verdict it must return" or (2) "withdraw the case from the jury and render judgment." *Connell v. Connell*, 889 S.W.2d 534, 539 (Tex. App.—San Antonio 1994, writ denied). The trial judge did not take either of those actions. Instead, he left the case with the jury and allowed it to return a verdict. *5 CR 419*. At that point, a directed verdict was no longer available. *Allison*, 156 S.W.2d at 528; *Bradle*, 83 S.W.3d at 927. Neither was a JNOV, because there was no written motion or notice of hearing to support it. TEX. R. CIV. P. 301;

5

*Olin Corp. v. Cargo Carriers, Inc.*, 673 S.W.2d 211, 213–14 (Tex. App.—Houston [14th Dist.] 1984, no writ).

King acknowledges that after it rested "it re-urged its directed verdict motion, which the District Court succinctly denied." *Appellee's Br. at 9 n. 1* (citing *9 RR 53*). According to King, the trial court's denial of the re-urging of that motion "logically followed from its directive that it would 'carry' King's first motion until after the jury returned." *Id.* But King does not explain the logic of its theory that a trial court can "carry" a motion for directed verdict at the close of a plaintiff's evidence, subsequently deny that motion when the defendant re-urges it at the close of all evidence, submit the case to the jury and receive its verdict, but then direct the jury to return a different verdict after having discharged the jurors and sent them home.

The only result that "logically followed" from the trial court's statement that it was withholding a ruling on King's motion for directed verdict at the close of the plaintiff's case is that if King elected to present evidence, it would have to re-urge that motion at the close of all evidence (it did) or, if the case went to the jury (it did), King would have to file a written motion for JNOV (it did not).

King did not file a "second" motion for instructed verdict; by its own admission, it "re-urged" the same motion, and the judge denied it. *Appellee's Br. at 9 n. 1; 1986 Dodge 150 Pickup v. State*, 129 S.W.3d 180, 184 (Tex. App.—Texarkana 2004, no pet.) ("If a party proceeds to present evidence after that party has moved for a directed verdict, such party must reurge the motion for directed verdict at the close of the case, or any error in its denial is waived."). The record is clear:

> KING'S ATTORNEY: "Your Honor, at this time Defendant again raises his motion for directed verdict on my affirmative defense."
>
> THE COURT: "Denied."
>
> KING'S ATTORNEY: "And Defendant closes, and then re-raises it again."
>
> THE COURT: "Denied."

*9 RR 53.*

Therefore, despite King's claims otherwise, the trial court did deny its motion for directed verdict. *Id.; Carter v. State*, No. 05-96-00805-CR, 1998 WL 83799, at *2 (Tex. App.—Dallas Feb. 24, 1998, no pet.) (not designated for publication) (in which the trial court took no action "[to] instruct[] the jury as to a directed verdict or [to] dismiss[] the jury and enter[] a judgment," but instead "denied the motion for an instructed

7

verdict," which "support[ed] a conclusion that the motion for a directed verdict was denied").

Having re-urged the same motion the judge initially said he would "carry" with the case, and having had that motion denied twice, King cannot plausibly maintain that the judge did not subsequently deny its motion for directed verdict. *9 RR 53.* King's theory is both illogical and legally absurd and contemplates the court directing a jury to return a verdict after it had already done so and had been discharged.

Although the trial judge initially said he would "carry" the motion for directed verdict with the case, he did not carry it past the explicit denial of the re-urging of that motion at the close of all evidence, and he could not carry it past the jury's verdict. *Allison*, 156 S.W.2d at 528 *Bradle*, 83 S.W.3d at 927. The appropriate procedure to challenge the verdict of a jury that has returned a verdict and been discharged is a motion for JNOV, not a motion for instructed verdict. *Smith v. Safeway Stores*, 167 S.W.2d 1044, 1046 (Tex. Civ. App.—Fort Worth 1943, no writ) ("It is also the settled law in this state that where an instructed verdict should have been given, or when a special issue finding has no support in the evidence, the court may, upon motion to that effect,

disregard the verdict of the jury and render judgment non obstante veredicto." (citing TEX. R. CIV. P. 301).

**B.** **The special master's report cannot change, nor did it purport to eliminate, the requirement that a written motion for JNOV is necessary to disregard a jury verdict.**

The order appointing the special master does not "make plain" that the trial court "was asking the special master to opine on whether the District Court should grant or deny King's motion for directed verdict," as King claims. *Appellee's Br. at 9.* The trial court had already denied that motion twice and had submitted the case to the jury, which had returned a verdict. Rather, the order "makes plain" that the trial judge was asking the special master's opinion on whether the trial court should grant Hernandez's motion to enter a judgment on the jury's verdict—the only motion that was pending—or, in the event King filed a motion for JNOV, which it never did, whether the trial court should grant that motion instead. *5 CR 455.*

King claims Hernandez "is asking this Court to newly impose a deadline requiring District Courts to decide all directed verdict motions before submitting issues to the jury." *Appellee's Br. at 10.* But this deadline is not new. Case law and common sense have long recognized that a trial court cannot grant a motion to direct the jury to reach a

9

verdict after the jury has already returned one and has been discharged. *Allison*, 156 S.W.2d at 528; *Bradle*, 83 S.W.3d at 927. The proper mechanism to negate a jury's verdict is a motion for JNOV after the verdict (the V in JNOV), not a motion to direct the jury to reach a verdict after they have already done so and have left the courthouse, placing them beyond the reach of any direction from the trial court. *Id.;* TEX. R CIV. P. 301.

In support of its assertion that a trial court can direct a jury to render a verdict after it has already done so and been discharged, King cites Texas Rule of Civil Procedure 268, noting it contains no time limits and "requires only that a motion requesting directed verdict 'state the specific grounds therefor.'" *Appellee's Br. at 11* (quoting TEX. R. CIV. P. 268). But this rule addresses only the content a litigant must include in the motion, not the deadline for a judge to rule on that request. TEX. R. CIV. P. 268. Therefore, the absence of any provision regarding the timing of a ruling on a motion for directed verdict does not equate to authorization to do so after "submitting an issue to the jury," as King urges, because this rule does not answer and was not intended to answer the question of whether a trial court can grant a directed after the jury has already returned a verdict. *Appellee's Br. at*

10

11. Case law, however, has addressed this question, and the answer is no. *Allison,* 156 S.W.2d at 528; *Bradle,* 83 S.W.3d at 927.

Because the trial court did not direct the jury to return a verdict, but instead overturned the verdict they returned, the judge's ruling is, in substance, a JNOV, issued in the absence of the required motion and notice. TEX. R. CIV. P. 301. And, as King itself concedes, substance controls over form, notwithstanding King's technical attempt to revise this substantive reality. *Appellee's Br. at 14, n.3.*

King claims Hernandez's arguments represent the Shakespearean equivalent of "sound and fury," signifying no reversible error. *Appellee's Br. at 14.* But in trying to twist the trial court's action into an order granting a motion for instructed verdict, King is engaging in another Shakespearean exercise: it undergoes too strict a paradox striving to make an ugly deed look fair.

## II. Hernandez preserved error by filing a motion for judgment on the verdict, which the trial court denied.

"Requiring parties to raise complaints at trial conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds," King urges. *Appellee's Br. at 12* (quoting *In the Interest of B.L.D.,* 113 S.W.3d 340, 350 (Tex. 2003)). But Hernandez gave the trial judge that opportunity by timely filing a motion asking

11

the court to grant a judgment in accordance with the jury's verdict assessing damages in excess of $2,000,000.00. Instead, the court denied the motion and rejected the jury's verdict and rendered a take nothing judgment against Hernandez. *5 CR573. See Emerson v. Tunnell*, 793 S.W.2d 947, 948 (Tex. 1990) (holding that the plaintiff preserved error by filing a motion for judgment on the verdict and obtaining an adverse ruling from the trial court on that motion).

Nevertheless, King claims Hernandez's objection was untimely because he did not make it "at the earliest opportunity" when the complained-of action "be[came] apparent." *Appellee's Br. at 12*. But there was no action to complain about until the trial court overturned the jury's verdict, and Hernandez had already filed a motion for judgment, which preserved his right to complain of the trial court's error in signing a judgment contrary to the jury's verdict. *Emerson*, 793 S.W.2d at 948.

According to King, Hernandez "passed on multiple opportunities to timely object when it had become 'apparent' that the District Court intended to take up King's directed verdict motion after the jury returned its verdict." *Appellee's Br. at 13*. But it was not "apparent" that the trial court "intended to take up" a motion it had already twice

12

denied, especially after having submitted the case to the jury and having received its verdict—actions and a result that are the antithesis of "taking up" a motion for directed verdict—particularly after having told King it would need to file a motion for judgment notwithstanding the verdict. 9 *RR 28*.

The only matter "apparent" to Hernandez was that that the trial court was unjustifiably hesitant to grant his motion for judgment on the jury's verdict—the only motion that was pending—and that the judge wanted an opinion from the special master before ruling on that motion. *5 CR 455*. Having received that opinion in the form of a comprehensive report that confirmed the judge should grant Hernandez's motion, and having told King it needed to file a motion for JNOV, which King had not done, it was not only unexpected, but shocking, that the trial court overturned the jury's verdict. *5 CR 462; 9 RR 28*.

Hernandez did not have a "strategy of waiting to see whether a decision [came] out in his favor before challenging the manner in which the District Court reach[ed] it." *Appellee's Br. at 14*. He had no idea the trial court would reach the decision it did, considering: (1) King still had not filed the motion for JNOV, which the trial court had stated would be necessary to overturn the verdict; (2) the only motion pending before the

13

trial court was Hernandez's motion for judgment on the jury's verdict; and (3) the court-appointed special master had recommended that the trial court sign a judgment incorporating the jury's verdict.

Hernandez did not "acquiesce" in King's characterization of the issue before the special master as being whether King was entitled to a directed verdict or not. *Appellee's Br. at 13 n. 2*. Regardless, any such assertion in and of itself is of no consequence; it is the trial court's judgment contravening the jury's verdict that created the error that is the subject of this appeal, and that error did not occur until the trial court signed the judgment of which Hernandez complains. That complaint was timely because Hernandez had filed a motion for judgment on the jury verdict, thereby reiterating the obvious fact that any judgment contrary to that verdict would be objectionable. *See Emerson*, 793 S.W.2d at 948.

## III. The trial court's overturning the jury's verdict prejudiced Hernandez.

"[E]ven if the District Court's procedure for granting a directed verdict was unconventional," claims King, "Hernandez suffered no prejudice." *Appellee's Br. at 14*.

14

Not unless having a $1,265,577.44 jury verdict taken away constitutes "suffer[ing] no prejudice."[1] Furthermore, if, as King claims, the trial court granted a directed verdict, it was not only merely "unconventional," it was also unauthorized.

As King concedes, "[u]nder Texas Rule of Appellate Procedure 44.1, this Court reverses erroneous district court decisions" if they "probably caused an improper judgment to be entered …" *Appellee's Br. at 14.* Granting a JNOV in the absence of a motion and notice of hearing and in the face of conflicting evidence constitutes an improper judgment. *St. Paul Fire & Marine Ins. Co. v. Bjornson*, 831 S.W.2d 366, 369 (Tex. App.—Tyler 1992, no writ).

A trial court "may not, ordinarily, simply disregard, on its own initiative or motion, a jury finding and/or render a judgment non obstante veredicto on its own initiative or motion." *Bjornson*, 831 S.W.2d at 369. "In fact, and to the contrary, not only must there be a written motion and reasonable notice for a trial court to disregard a jury finding and/or render a judgment non obstante veredicto, the written motion to disregard a jury finding must be directed to the

---

[1] According to Hernandez's calculations giving credit for his attributed comparative negligence and for pre- and post-judgment interest, his judgment should be in the amount of $1,012,462.04.

15

objectionable issue or issues and point out the reasons why such issues should be disregarded."). *Id.* The judgment entered here violated all these principles, and respectfully, must be reversed.

In the alternative, even accepting solely for argument's sake King's claim that the trial judge granted its motion for directed verdict after submitting the case to the jury, receiving their verdict, and discharging them, it is improper to grant such a motion after the jury has returned a verdict. *Allison*, 156 S.W.2d at 528; *Bradle*, 83 S.W.3d at 927. Either way, the harm is the same: the loss of a substantial jury verdict.

Regardless, the question of harm is irrelevant, because, in the absence of a motion for JNOV and notice of a hearing on that motion, the trial court had no jurisdiction to grant a JNOV, thereby making that ruling void. *Olin*, 673 S.W.2d at 213–14 (holding that the trial court "erred in overruling [a] motion for judgment on the verdict" and in "sua sponte" granting a JNOV, "because it had no power to do so absent a proper motion seeking such relief," and recognizing that "Texas appellate courts have uniformly construed the motion requirement of Rule 301 to be jurisdictional");[2] *see also In re John G. & Marie Stella*

---

[2] All internal citations and quotations omitted unless otherwise noted.

*Kenedy Mem'l Found.*, 315 S.W.3d 519, 522 (Tex. 2010) (orig. proceeding) (holding that, in the absence of jurisdiction, a trial court's ruling is void).

According to King, Hernandez "has long been on notice of the District Court's intent to 'carry' the motion until after the jury returned its verdict" and "[t]his was not the case of a trial court sua sponte entering JNOV out of the clear blue." *Appellee's Br. at 15*. But the only notice of intent Hernandez had was the same as King received: a JNOV would have to be filed. *9 RR 28*. And the "out of the blue" nature of this ruling could not be clearer: the trial judge had twice denied King's motion for a directed verdict, had submitted the case to the jury and received its verdict, and had told King it would need to file a motion for JNOV, which King did not do. *9 RR 28*. The only motion pending before the trial court was Hernandez's motion to enter a judgment on the jury's verdict, and, based on well-settled law, the court-appointed special master recommended that the trial court sign a judgment on that verdict. Therefore, although it was conceivable that the judge might make some changes in the wording of the judgment Hernandez proposed, it was *in*conceivable that the trial court would not grant a

17

judgment on the jury's verdict but instead would grant a JNOV, which, without a motion from King, was necessarily sua sponte.

King erroneously claims that Hernandez suffered no harm because "the standard of review is the same" and Hernandez "would be the appellant had the Court entered a directed verdict or JNOV." *Appellee's Br. at 15*. But the trial court did not enter a directed verdict. *Id.* Therefore, the only issue is whether the JNOV was proper. It was not, because it lacked a motion to support it, *Olin,* 673 S.W.2d at 213–14, and because King did not prove its affirmative defense as a matter of law as it claims. *Id.* Instead, King created, at most, a fact issue for the jury, which resolved that question against King. *5 CR 422*.

King speculates that Hernandez "appears to assume that had King filed a separate motion for JNOV, the District Court would have denied it and 'Hernandez would be the holder of a substantial judgment.'" *Appellee's Br. at 15*. But Hernandez does not assume anything and King's speculation misses the point: the trial judge had already denied King's motion for directed verdict and had submitted the case to the jury, which returned a verdict. Therefore, the only way the trial court could grant a JNOV would be if King filed a motion for JNOV

18

or if the jury's answers were immaterial, neither of which is the case. *Olin,* 673 S.W.2d at 213–14.

"There is no evidence," says King, "the procedural posture—motion for directed verdict carried over from trial or new motion for JNOV—had any impact on the District Court's decision." *Appellee's Br. at 16.* If, by that, King means the trial court would have overturned the jury's verdict either way, that may be true; however, it is also true that, either way, the harm is the same: the loss of a large jury verdict as a result of the trial court's erroneous ruling.

## IV. The evidence did not prove as a matter of law that Hernandez was King's employee.

King asserts the trial court "correctly directed a verdict" in its favor because it purportedly proved its "employee" defense "as a matter of law," *Appellee's Br. at 16,* but it did not. That claim is incorrect on both counts: (1) the court twice denied a requested directed verdict, and (2) King did not prove its affirmative defense as a matter of law, at most the evidence raised a fact issue, which the jury answered against King. *Section I, infra.*

Even a directed verdict "is warranted only when the evidence conclusively demonstrates that no other verdict could be rendered." *Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex. 1985). "In determining

19

whether it was proper to instruct a verdict, the appellate court must view the evidence in the light most favorable to the party against whom the instructed verdict was granted, and every inference that may properly be drawn from the evidence must be indulged against the instruction." *State v. ADSS Properties, Inc.*, 878 S.W.2d 607, 614 (Tex. App.—San Antonio 1994, writ denied) (citing *White v. White*, 172 S.W.2d 295, 296 (Tex. 1943)).

"If the record reflects any evidence of probative force in favor of the party against whom the instruction was granted, the appellate court must hold the instruction improper." *ADSS Properties,* 878 S.W.2d at 614 (citing *White,* 172 S.W.2d at 296). "It is error to grant an instructed verdict when evidence and reasonable inferences from the evidence raise issues of fact. And, if an instructed verdict would not be proper, it is error to grant judgment notwithstanding the verdict." *ADSS Properties,* 878 S.W.2d at 614.

King does not adhere to the legal-sufficiency standard of review it cites. *Appellee's Br. at 17.* Instead of viewing the evidence in the light most favorable to the jury's verdict, as required by case law, King recites the evidence in a manner it deems most favorable to itself. *Bywaters,* 686 S.W.2d at 595; *White,* 172 S.W2d at 296.

For example, King claims it "controlled all work performed at its repair facility." *Appellee's Br. at 16.* But the evidence showed that King did not control those details, or, at a minimum, this evidence created a fact issue regarding that control. *5 RR 149, 185; 6 RR 137-38.*

King also urges that Hernandez failed to follow King's directions, which caused his injuries. But by its own admission, King's instructions to Hernandez had nothing to do with the details, or even the generalities, of how Hernandez was to do his work. King simply provided safety guidelines to follow while performing that work. *6 RR 165-67, 180-81; 7 RR 34; 20 RR 6-8, 13-57.* The same is true of King's furnishing some of the tools Hernandez used. Making tools available is not the same as telling a worker how he must use those tools.

King's claim that these safety guidelines constituted controlling the details of Hernandez' work, when weighed against the evidence that ATG controlled those details, created a fact question for the jury, thereby precluding a judgment in King's favor as a matter of law.

According to King, it was "undisputed" that it "controlled both the stepladder and the stand that [Hernandez' was using when he hurt himself" by not following King's warning "not to put a ladder on those stands." *Appellee's Br. at 16.* But, as Hernandez pointed out, "[i]t was a

common practice," which everyone knew about. *5 RR 147.* Furthermore, furnishing equipment to use in performing a job does not equate to controlling the details of how a worker accomplishes that job. The evidence shows ATG, not King, exercised control over the details of that job performance. *5 RR 149, 185; 6 RR 137-38.* At an alternative minimum, that evidence created a fact issue, which does not support a judgment as a matter of law. *St. Paul Fire & Marine Ins. Co. v. Bjornson*, 831 S.W.2d 366, 369 (Tex. App.—Tyler 1992, no writ).

King cites *Wingfoot Enter. v. Alvarado* for the proposition that "[e]mployees may have more than one employer." *Appellee's Br. at 18-19* (citing 111 S.W.3d 134, 135 (Tex. 2003)). Although in theory that may be true in some cases, in fact it is not true here. Unlike *Wingfoot,* in which there was no issue on appeal regarding whether the hiring defendant controlled the details of that worker's job, a factual dispute existed here as to whether King had any such control. 111 S.W.3d at 139, 149.

The issue of whether the hiring defendant was an employer of the plaintiff was not before the Court in *Wingfoot,* because the plaintiff did not appeal the jury's finding on that question, and, in fact, conceded that he was an employee of the hiring defendant. 111 S.W.3d at 139.

22

The only question was "whether the exclusive remedy provision can apply to both the general employer and one who has become an employer by controlling the details of a worker's work at the time of injury." *Id.* Here, as in *Wingfoot*, a jury answered the fact question of whether the plaintiff (Hernandez) was an employee of the hiring defendant (King). *5 CR 422;* 111 S.W.3d at 139. The only difference is that the jury in *Wingfoot* resolved that factual dispute in favor of the hiring defendant, whereas here they found in favor of the plaintiff (Hernandez) against the hiring defendant (King). *Id.* That is because in *Wingfoot* there was evidence that the plaintiff was injured while working under "the direct supervision of [the] client company," whereas, there is no such evidence that Hernandez was working under King's "direct supervision." *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 (Tex. 2005) (citing *Wingfoot*, 111 S.W.3d at 143). In the alternative, there was at least an evidentiary dispute on this point, which makes it a question of fact for the jury, not a matter of law for the trial court.

King also claims that it has a contract giving it the right to control the details of Hernandez's work and that this "written contract addressing the 'right of control' is determinative." *Appellee's Br. at* 19 (citing *Robles v. Mount Franklin Food, L.L.C.*, 591 S.W.3d 158, 165

23

(Tex. App.—El Paso 2019, pet. denied)). But a factual dispute existed as to whether King had any such contract with Hernandez, and the jury resolved that question against King's claim. *6 RR 132-33; 5 CR 422.*

Furthermore, *Robles* recognized that even if a written contract existed, it does not necessarily control. 591 S.W.3d at 165. For example, assuming for hypothetical purposes that King had proven the existence of the contract it claims it had with Hernandez, a fact question would still exist as to whether the parties modified the contract by a subsequent express or implied agreement. *Id.; see also Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964) (holding that a written contract may be modified "by a subsequent agreement expressed or implied"). Furthermore, when, as here, "the terms of the employment are indefinite," evidence of the exercise of control "may be the best evidence available to show the actual terms of the contract." *Love*, 380 S.W.2d at 590.

King urges that Texas courts "construe the TWCA liberally in favor of coverage as a means of affording employees the protections the Legislature created." *Appellee's Br. at 18* (quoting *Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012)). But King is trying to construe this Act to protect itself, not an employee.

24

Furthermore, Texas courts construe evidence liberally in favor of jury verdicts to protect those verdicts and the litigants in whose favor the jury ruled. *See Jackson v. Axelrad*, 221 S.W.3d 650, 653 (Tex. 2007) (noting presumptions in favor of jury verdicts are designed to protect verdicts from second-guessing on appeal). King is trying to construe that evidence in the opposite manner as a means of undoing a verdict this construction is intended to protect.

In similar fashion, King claims Texas appellate opinions are "replete" with examples of temporary workers "being deemed the employee or borrowed servant of the company where the employee was working when he or she was injured." *Appellee's Br. at 23*. But, as set forth above, Texas cases are also replete with examples of appellate courts reversing trial judges for granting judgments as a matter of law when fact questions existed and, in particular, for granting JNOVs without supporting motions.

## PRAYER

For the reasons cited in this brief and in Appellant's opening briefing, Appellant, Jorge Hernandez, respectfully asks this Court to:

- reverse the trial court's judgment against Hernandez;

25

- render judgment in Hernandez's favor in accordance with the jury's verdict and as requested in his motion for entry of judgment;

- in the alternative, remand this case in part or in full with instructions for the trial court to proceed in a manner consistent with this Court's opinion; and

- grant Hernandez all other relief to which he is entitled.

Respectfully submitted,

*/s/ Catherine M. Stone*
CATHERINE M. STONE
State Bar No. 19286000
cstone@langleybanack.com
OTTO S. GOOD
State Bar No. 08139600
ogood@langleybanack.com
RUBEN VALADEZ
State Bar No. 00797588
rvaladez@langelybanack.com
LANGLEY & BANACK, INC.
Trinity Plaza II, Suite 700
745 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone: (210) 736-6600
Telecopier: (210) 735-6889

HUMBERTO S. ENRIQUEZ
State Bar No. 00784019
enriquezlawfirm@sbcglobal.net
THE ENRIQUEZ LAW FIRM, PLLC
1212 Montana Avenue
El Paso, Texas 79902
Telephone: 915.351.4331
Telecopier: 915.351.4339

ATTORNEYS FOR APPELLANT
JORGE L. HERNANDEZ

26

## CERTIFICATE OF WORD COMPLIANCE

Appellant certifies that the number of words in this brief, including its headings, footnotes, and quotations, is **5581**.

*/s/ Catherine M. Stone*
CATHERINE M. STONE

## CERTIFICATE OF SERVICE

I hereby certify that on **March 15, 2021** a true and correct copy of the foregoing instrument was served on the following counsel of record in accordance with the Texas Rules of Appellate Procedure:

Bryan P. Rose
bryan.rose@stinson.com
STINSON LLP
1050 17th Street, Suite 2400
Denver, CO 80265
Telephone: 303-376-8415

James A. Daross
jdaross@darosslaw.com
4809 Costa de Oro Road
El Paso, Texas 79922
Telephone: 915-549-7805
Telecopier: 915-974-3912

*/s/ Catherine M. Stone*
CATHERINE M. STONE

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Teresa Rodriguez on behalf of Catherine Stone
Bar No. 19286000
trodriguez@langleybanack.com
Envelope ID: 51468790
Status as of 3/15/2021 11:49 AM MST

Associated Case Party: JorgeLHernandez

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Otto SGood | | ogood@langleybanack.com | 3/15/2021 10:58:20 AM | SENT |
| Catherine MStone | | cstone@langleybanack.com | 3/15/2021 10:58:20 AM | SENT |
| Teresa H.Rodriguez | | trodriguez@langleybanack.com | 3/15/2021 10:58:20 AM | SENT |
| Ruben Valadez | | rvaladez@langleybanack.com | 3/15/2021 10:58:20 AM | SENT |
| Humberto S. Enriquez | | enriquezlawfirm@sbcglobal.net | 3/15/2021 10:58:20 AM | SENT |

Associated Case Party: King Aerospace

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James A. Daross | 5391500 | jdaross@darosslaw.com | 3/15/2021 10:58:20 AM | SENT |
| Bryan Rose | 24044704 | bryan.rose@stinson.com | 3/15/2021 10:58:20 AM | SENT |
| Faith Eaton | | featon@fbtlaw.com | 3/15/2021 10:58:20 AM | SENT |
| Benjamin West | 24084074 | bwest@fbtlaw.com | 3/15/2021 10:58:20 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Emily Sylvia | | emily.sylvia@stinson.com | 3/15/2021 10:58:20 AM | SENT |
| Judith Araujo | | judith.araujo@stinson.com | 3/15/2021 10:58:20 AM | SENT |
| Ryan Sugden | | ryan.sugden@stinson.com | 3/15/2021 10:58:20 AM | SENT |
| Tayler Bradley | | tayler.bradley@stinson.com | 3/15/2021 10:58:20 AM | SENT |